IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

DANIEL WALKER, on behalf of himself
and all others similarly situated                                                  PLAINTIFF

V.                                                                                                   CAUSE NO.: 4:09CV103-SA-DAS

PROGRESSIVE GULF INSURANCE COMPANY                            DEFENDANT

MEMORANDUM OPINION

This case was removed from the Leflore County Circuit Court. Defendant filed a Motion for Summary Judgment[15] on January 21, 2011. After reviewing the motion, response, rules and authorities, the Court grants that motion.

*Factual and Procedural Background*

Daniel Walker procured comprehensive coverage insurance on his 2002 Honda four-wheeler from Progressive Gulf Insurance Company (Progressive) in 2004. He renewed that policy in October of 2008 for one year. Walker's insured 2002 Honda four-wheeler was stolen in January of 2009. Walker filed a claim for loss of the vehicle. Progressive adjusted the claim and tendered a check in the amount of $1,911.40, which Progressive determined to be the actual cash value of the four-wheeler at the time of the loss, less the applicable $250.00 deductible. Walker rejected the check, insisting that his policy provided for Total Loss Replacement coverage, which would entitled him to the value of a new four-wheeler of like make and model to replace the stolen 2002 model.

Walker filed a complaint asserting breach of contract and bad faith and seeks contractual, extracontractual, and punitive damages. Defendant counters that Walker's policy did not provide for Total Loss Replacement (TLR) coverage, he did not request TLR coverage, and he did not pay for TLR coverage. Thus, Walker is only entitled to the actual cash value of the property at the time

of loss.

*Summary Judgment Standard*

Summary judgment is warranted under Rule 56(c) when the evidence reveals no genuine dispute regarding any material fact, and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id. at 324, 106 S. Ct. 2548. Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Little, 37 F.3d at 1075. In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." Id.

*Discussion and Analysis*

Walker applied for insurance on his four-wheeler in October of 2004. At that time, he elected for comprehensive and collision coverage and signed the following acknowledgment:

> I agree that the maximum limit of liability for Comprehensive and Collision Coverage (if purchased) is the Actual Cash Value of the factory standard vehicle at the time of the loss if the vehicle does not have Agreed Value.

2

On the Renewal Declarations page for Walker's policy term commencing October 22, 2008, he is noted as again having Comprehensive coverage. Under Part IV - Damage to a Motorcycle, the insurance contract provides as follows:

> INSURING AGREEMENT - COMPREHENSIVE COVERAGE
> If you pay the premium for this coverage, we will pay for sudden, direct, and accidental loss to a covered motorcycle . . . that is not caused by a collision. A loss not caused by a collision includes . . . [] theft or larceny.
>
> The limits of liability are outlined in the policy as the lowest of:
>
> a. the actual cash value of the stolen or damaged property at the time of the loss reduced by the applicable deductible;
>
> b. the amount necessary to replace the stolen or damaged property reduced by the applicable deductible;
>
> c. the amount necessary to repair the damaged property to its pre-loss condition reduced by the applicable deductible; or
>
> d. the Agreed value shown on the declarations page for that covered motorcycle.

In addition to breaking out the Comprehensive coverage requirements and limits, the agreement also has a provision regarding Total Loss Replacement Coverage:

> INSURING AGREEMENT - TOTAL LOSS REPLACEMENT COVERAGE
>
> If there is a total loss to a motorcycle shown on the declarations page and you have <u>paid the premium for this coverage</u>, then . . . the Limits of Liability provision . . . will not apply to that total loss.

(emphasis added).

Prior to renewal in October of 2008, Progressive sent Walker explanatory materials of new coverages and options available to insureds as part of the policy insuring motorized vehicles. Walker asserts that this mailing of explanatory materials altered his insurance contract and entitled him to Total Loss Replacement of his 2002 Honda four-wheeler.

3

The letter sent noted that there were "New Coverage and Discount Options available to you." These options included Total Loss Replacement Coverage. The letter further advised that "the enclosed renewal offer reflects the coverage and discounts that will be in effect during your next policy term. If you have any questions at all, or wish to purchase additional coverage, please contact your agent." As noted above, Walker's renewal noticed that he was insured under Comprehensive Coverage.

The attendant brochure showed coverage changes under the current policy side by side with options for coverage under the renewal policy. The brochure noted that under Walker's current policy, the TLR coverage box was blank, and under the renewal policy, indicated that "Total Loss Replacement Coverage is a new coverage which will provide for the replacement of your motorcycle or the actual cash value of your motorcycle in the event of a total loss." The brochure further indicated that if there were differences between the summary and policy contract, "the policy contract will control." As noted above, the only coverage indicated on Walker's renewal form was Comprehensive coverage, not Total Loss Replacement Coverage.

Walker admits that he did not request Total Loss Replacement coverage and has put forth no evidence that he paid premiums for that level of coverage. Walker asserts that no one informed him additional premium payments were necessary for TLR coverage.

Courts are obligated to enforce a contract that is executed by legally competent parties containing clear and unambiguous terms, and parties are bound by its provisions. Ivison v. Ivison, 762 So. 2d 329, 335 (Miss. 2000). "The mere fact that the parties disagree about the meaning of a provision of a contract does not make the contract ambiguous as a matter of law." Id. The Court "is not concerned with what the parties may have meant or intended but rather what they said, for the

4

language employed in a contract is the surest guide to what was intended." Id. at 336. The meaning of a contract is determined using an objective standard, rather than taking into consideration a subjective intent or a party's belief that may conflict therewith. Palmere v. Curtis, 789 So. 2d 126, 131 (Miss. Ct. App. 2001) (citation omitted).

The Mississippi Supreme Court has established a three-tiered process for contract interpretation:

> First, we look to the "four corners" of the agreement and review the actual language the parties used in their agreement. [Pursue Energy Corp. v. Perkins, 558 So. 2d 349,] 352 [(Miss. 1990)]. When the language of the contract is clear or unambiguous, we must effectuate the parties' intent. Id. However, if the language of the contract is not so clear, we will, if possible, "harmonize the provisions in accord with the parties' apparent intent." Id. Next, if the parties' intent remains uncertain, we may discretionarily employ canons of contract construction. Id. at 352-53 (citing numerous cases delineating various canons of contract construction employed in Mississippi). Finally, we may also consider parol or extrinsic evidence if necessary. Id. at 353.

West v. West, 891 So. 2d 203, 210-11 (Miss. 2004).

The language of the policy is sufficiently clear - the limit of liability for comprehensive coverage is the actual cash value minus the applicable deductible, while the limit of liability for total loss replacement coverage is replacement cost. The Court also finds that Walker intended for his four-wheeler to be insured with Comprehensive Coverage and paid premiums to that effect. He received renewal notices declaring Comprehensive coverage as his insurance policy choice. Walker signed a form acknowledging the limit of liability under the Comprehensive Coverage as the actual cash value less deductible at the time he originally entered into the insurance contract. The explanatory materials, not part of the policy at issue here, merely noted "options" available to Plaintiff. Walker's subjective belief of coverage does not alter the contract of insurance.

5

See Palmere, 789 So. 2d at 131 (subjective belief of party to a contract not determinative of contract interpretation). Thus, under the contract of insurance with Progressive, Walker is only entitled to the actual cash value of the 2002 Honda four-wheeler at the time of the loss, less the applicable $250.00 deductible.

Defendant's Motion for Summary Judgment is GRANTED, and this case is CLOSED.

SO ORDERED, this the 16th day of May, 2011.

                                         **/s/ Sharion Aycock**
                                         **U.S. DISTRICT JUDGE**